UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

PATRICIA CHRISTINE K.,[1]

                    Plaintiff,

v.

ACTING COMMISSIONER OF SOCIAL
SECURITY,

                    Defendant.

_____

**DECISION AND ORDER**

1:21-cv-0762 (JJM)

       This is an action brought pursuant to 42 U.S.C. §1383(c)(3) to review the final

determination of the Commissioner of Social Security that plaintiff was not entitled to

supplemental security income ("SSI") benefits.  Before the court are the parties' cross-motions

for judgment on the pleadings [9, 11].[2]  The parties have consented to my jurisdiction [13].

Having reviewed their submissions [9, 11, 12], the Commissioner's motion is granted and

plaintiff's motion is denied.

## BACKGROUND

       The parties' familiarity with the 2,196-page administrative record [6, 7] is

presumed.  Further, the parties have comprehensively set forth in their papers the plaintiff's

---

[1]      In accordance with the guidance from the Committee on Court Administration and Case
Management of the Judicial Conference of the United States, which was adopted by the Western District
of New York on November 18, 2020 in order to better protect personal and medical information of non-
governmental parties, this Decision and Order will identify the plaintiff using only the first name and last
initial.

[2]      Bracketed references are to the CM/ECF docket entries.  Page references to the administrative
record are to the Bates numbering.  All other page references are to the CM/ECF pagination (upper right
corner of the page).

treatment history and the relevant medical evidence. Accordingly, I reference below only those facts necessary to explain my decision.

This is plaintiff's fourth appeal of an unfavorable decision on her claim, which she filed on June 9, 2010, and her third appeal to this court. *See* Administrative Record [6] at 111 ("[o]n June 9, 2010, the claimant protectively filed an application for supplemental security income"); 130-33 (March 9, 2012 Order of Appeals Council Remanding Case to Administrative Law Judge ("ALJ")); 895-904 (May 14, 2017 Decision and Order of District Judge Skretny remanding the case to the Commissioner); 1898-900 (November 21, 2019 Stipulation and Order for Remand, signed by Chief Judge Geraci)). Plaintiff alleges a disability beginning on June 3, 2010, due to cervical and lumbar disc disease, chronic pain, lumbar radiculopathy, anxiety and depression, chronic fatigue, and headaches. Administrative Record [7] at 2023. Following the most recent remand from this court , the Appeals Council ("AC") outlined several issues with the prior decision, dated October 2, 2018, including with respect to the ALJ's analysis of treating physician, Dr. Michael Calabrese's functional opinions:

> "The [ALJ] considered and assigned reduced weight to multiple opinions from Dr. Calabrese . . . . In weighing the opinions, the [ALJ] considered the consistency of the opinion with the record as a whole and the supportability. However, the decision did not cite to specific evidence to support the reduced weight assigned to Dr. Calabrese's opinions or consider other opinion factors required by 20 CFR 416.927 such as the length of the treatment relationship and frequency of examination, the nature and extent of the treatment relationship, and the specialization."

Id. [7] at 1905. Upon remand, the AC directed the ALJ to resolve these issues and to:

> "Give further consideration to the claimant's maximum residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations . . . In so doing, evaluate the treating and nontreating source opinions pursuant to the provisions of 20 CFR 416.927, and explain the weight given to such opinion evidence."

-2-

Id.

Plaintiff has had four hearings on her claim. Plaintiff's third hearing was held on August 21, 2018.  At that hearing, plaintiff, who was represented by an attorney, testified along with a medical expert (Peter M. Schosheim, M.D.) and a vocational expert.  Id. at 833-93. Following remand, another administrative hearing was held on January 21, 2021 before ALJ Stephen Cordovani.  Id. at 1810-69 (transcript of hearing).  Plaintiff, who was represented by an attorney, testified along with a medical expert (Sreedevi Chandrasekhar, M.D.) and a vocational expert.  Id. at 1816-67.  On March 3, 3021, ALJ Cordovani issued a decision finding that plaintiff "has not been under a disability, as defined in the Social Security Act, since June 9, 2010, the date the application was filed".  Id. at 1800.  In reaching that determination, ALJ Cordovani found that plaintiff's severe impairments were "depression and anxiety, obesity, degenerative disk disease of the lower back and neck, degenerative joint disease of the bilateral knees and left foot".  Id. at 1784.[3]

ALJ Cordovani found that plaintiff had the residual functional capacity ("RFC") to perform medium work, as defined in 20 CFR §416.967(c), with the following additional limitations:

> "[C]an sit for 4 hours continuously and six hours total; can stand 4 hours continuously and 6 hours total; can walk 4 hours continuously and 6 hours total; no work at unprotected heights; no ladders ropes or scaffolds; no balancing activities; no work around dangerous moving mechanical parts; occasionally understand, remember and carry out complex instructions and tasks; occasional changes in work routine and processes; can maintain attention and concentration in two hour increments."[4]

---

[3]     The plaintiff does not challenge these findings.

[4]     Plaintiff challenges only the physical aspects of the RFC.

Id. at 1787.

Plaintiff's arguments focus on ALJ Cordovani's treatment of Dr. Calabrese's opinions. She argues that he did not properly consider all the relevant factors when considering Dr. Calabrese's conclusions and cherry-picked evidence from the record to discount them. Plaintiff's Memorandum of Law [9-1] at 27. She argues that the ALJ failed to cite any evidence to support his conclusion that plaintiff's lack of atrophy on examination was "problematic", rendering this reason insufficient to give less weight to Dr. Calabrese's opinions. Id. at 27. Lastly, she argues that ALJ Cordovani's errors were not harmless because Dr. Calabrese's opinions, if credited, would preclude all work according to the vocational expert's testimony. Id. at 28-29.

Specifically, plaintiff argues that ALJ Cordovani erred by rejecting Dr. Calabrese's February 26, 2016 and April 7, 2017 opinions. Id. at 21; *see also* Administrative Record [6, 7] at 1222-23 and 1653-54. In both opinions, Dr. Calabrese opined that plaintiff was moderately limited in functional activities like walking; standing; sitting; lifting and carrying; pushing, pulling and bending; and navigating stairs or other climbing. Id. at 1223, 1654. He also described additional "permanent" functional limitations: "[n]o lifting [greater than] 10 lbs. Sedentary work only [with] the ability to alt[ernate] position hourly. [No] repetitive motions to [cervical spine] or [lumbar spine]". Id. at 1223; *see also* 1654 (substantively identical limitations).

Plaintiff argues that the ALJ failed to properly assess each of the relevant factors by "downplay[ing] the length of" Dr. Calabrese's treating relationship with plaintiff and the "evidence supporting the opinion[s]" in Dr. Calabrese's records, including "cervical and lumbar range of motion, antalgic gait, and myospasms". Plaintiff's Memorandum of Law [9-1] at 22.

Plaintiff argues that ALJ Cordovani improperly assessed whether Dr. Calabrese's opinions were consistent with other evidence in the record, especially those of consultative examiners Kathleen Kelly, M.D., a general surgeon, and Samuel Balderman, M.D., a thoracic surgeon.  Id. at 24-25.

The Commissioner responds by pointing to portions of the ALJ's analysis that demonstrate the RFC is supported by substantial evidence, contending that plaintiff's arguments amount to a plea for this court to re-weigh the evidence, and arguing that plaintiff did not meet her burden to show that no reasonable factfinder could have reached ALJ Cordovani's conclusions based on this record.   Commissioner's Brief [11-1] at 9-19.

I agree with the Commissioner that ALJ Cordovani articulated good reasons for his treatment of Dr. Calabrese's opinions, sufficiently explained why Dr. Calabrese's treatment records did not support the less-than-sedentary functional restrictions incorporated into his opinions, and that his RFC was based upon substantial evidence.  Therefore, as explained more fully below, the Commissioner's motion is granted.


**DISCUSSION**

A.        **Standard of Review**

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42 U.S.C. §405(g)).  Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York. Inc. v. NLRB, 305 U.S. 197, 229 (1938).   "[U]nder the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position.  Plaintiff must show that no reasonable

factfinder could have reached the ALJ's conclusions based on the evidence in the record".

Cheatham v. Commissioner, 2018 WL 5809937, *9 (W.D.N.Y. 2018); *see also* Brault v.

Commissioner, 683 F.3d 442, 448 (2d Cir. 2012) ("the substantial evidence standard means once

an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to*

*conclude otherwise*").

      An adjudicator determining a claim for Social Security benefits employs a five-

step sequential process. *See* Shaw, 221 F.3d at 132; 20 C.F.R. §§404.1520, 416.920. The

plaintiff bears the burden with respect to steps one through four, while the Commissioner has the

burden at step five. Talavera v. Astrue, 697 F.3d 145, 151 (2d. Cir. 2012).

      The RFC need "not perfectly correspond with any of the opinions of medical

sources cited in his decision" and an ALJ is "entitled to weigh all of the evidence available to

make an RFC finding that [is] consistent with the record as a whole". Matta v. Astrue, 508 Fed.

Appx. 53, 56 (2d Cir. 2013) (Summary Order). *See also* Young v. Berryhill, 2018 WL 2752443,

*2 (W.D.N.Y. 2018) ("[i]t is well settled that an ALJ need not adopt one or more medical

opinions verbatim in order to render a sufficiently-supported RFC determination").

      Under the "treating physician rule"[5], a treating physician's opinion is accorded

"controlling weight" if it is "well-supported by medically acceptable clinical and laboratory

diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record".

20 C.F.R. §§404.1527(c)(2); 416.927(c)(2). If the treating physician's opinion does not meet this

standard, the ALJ may discount it, but is "required to explain the weight it gives to the opinions

of a treating physician . . . .  Failure to provide 'good reasons' for not crediting the opinion of a

---

[5]    New regulations affecting an ALJ's review of medical evidence in a claimant's file are in effect
for claims filed on or after March 27, 2017. *See* 20 C.F.R. §§404.1520c, 416.920c. However, this claim
was filed on June 9, 2010. Administrative Record [7] at 1782.

claimant's treating physician is a ground for remand". <u>Snell v. Apfel</u>, 177 F.3d 128, 133 (2d Cir. 1999). *See also* 20 C.F.R. §§404.1527(c)(2), 416.927(c)(2). "The ALJ must consider, *inter alia*, the '[l]ength of the treatment relationship and the frequency of examination'; the '[n]ature and extent of the treatment relationship'; the 'relevant evidence . . . particularly medical signs and laboratory findings,' supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues." <u>Burgess v. Astrue</u>, 537 F.3d 117, 129 (2d Cir. 2008) (*citing* 20 C.F.R. §404.1527(d), now (c)). However, an ALJ's "failure to explicitly discuss the relevant factors does not necessarily require remand where a searching review of the record assures the court that the substance of the treating physician rule was not traversed." <u>Thomas W. v. Commissioner</u>, 2021 WL 3513840, *7 (W.D.N.Y. 2021).

It is "well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. . . . The opinion of a non-examining source may override that of an examining source, even a treating source, provided the opinion is supported by evidence in the record." <u>Maleski v. Commissioner</u>, 2020 WL 210064, *4 (W.D.N.Y. 2020); *see also* <u>Camille v. Colvin</u>, 652 F. App'x 25, 28 (2d Cir. 2016) ("[t]he ALJ was permitted to consider [treating] Dr. Dawood's treatment notes in weighing the opinions of Dr. Dawood and [consulting psychologist] Dr. Kamin; and she was permitted to conclude that Dr. Kamin's opinion was more reliable").

**B.        ALJ Cordovani's Opinion Was Supported by Substantial Evidence**

I agree with the Commissioner that ALJ Cordovani's opinion is based upon

substantial evidence, and that he incorporated sufficient analysis into his opinion to satisfy his

obligation to elucidate good reasons for assigning "little weight" to Dr. Calabrese's opinions.

Administrative Record [7] at 1792.  ALJ Cordovani's analysis demonstrates that he considered

the Burgess factors outlined above when he determined the weight to afford to Dr. Calabrese's

opinions.

**1.        ALJ Cordovani Considered the Burgess Factors**

ALJ Cordovani explicitly noted in his decision that Dr. Calabrese was plaintiff's

"treating primary care physician", who had been "treating the claimant since April of 2008"

"multiple times a year".  Id. at 1791-92.  This demonstrates that he considered Dr. Calabrese's

specialty; the length, nature, and extent of the treatment relationship; and the frequency of

examination.

His analysis also demonstrates that he considered the evidence supporting Dr.

Calabrese's opinion and the consistency of the opinions with the other evidence in the record.

Although this is discussed more fully below, as one example, ALJ Cordovani specifically

contrasted the restrictions opined by Dr. Calabrese in his July 25, 2010 and April 7, 2017

opinions with the findings upon examination recorded by consultative examiners Dr. Kelley on

August 24, 2010 and Dr. Balderman on November 29, 2017. Their findings included full strength

in the extremities, and no atrophy.  Id. at 1792.  ALJ Cordovani contrasted those findings with

Dr. Calabrese's "very limited" restrictions "in all exertional activities".  Id.

2.      **ALJ Cordovani Gave "Good Reasons" for Rejecting Dr. Calabrese's Opinions**

Plaintiff also argues that ALJ Cordovani's analysis of Dr. Calabrese's opinions failed to give "good reasons" for discounting them.  She argues that he did not adequately address the negative findings in Dr. Calabrese's treatment records or in Dr. Kelley's and Dr. Balderman's reports that, she argues, support his functional assessments.  Plaintiff's Memorandum of Law [9-1] at 24, 27.  I disagree.  First, "it is well-established that an ALJ is not required to mention or discuss every single piece of evidence in the record and the failure to cite specific evidence does not indicate that it was not considered."  Vacanti v. Commissioner, 2020 WL 836387, *3 (W.D.N.Y.  2020).  Second, on this voluminous record, citing, and analyzing, every finding in every opinion would be impossible.  This is the third appeal of this claim.  The record includes more than 2,000 pages, including over 1,000 pages of medical records.  *See* Administrative Record [6, 7] at 401-803, 1179-1779, 2039-2196.   Therefore, I find that ALJ Cordovani was not required to specifically address each and every negative finding contained in the record.

Third, ALJ Cordovani cited evidence demonstrating that he did consider negative findings upon examination contained in Dr. Calabrese's records.  Further, he gave other reasons throughout his analysis for discounting Dr. Calabrese's opinions.  ALJ Cordovani credited the opinions of Drs. Schosheim and Chandrasekhar, who testified at plaintiff's August 21, 2018 and January 21, 2021 hearings.  They were subject to cross-examination by the plaintiff's attorneys.  ALJ Cordovani assigned their opinions "some weight" because of the expertise of each doctor, the consistency of their opinions with one another, and their respective reviews of the entire medical record available to them.  Administrative Record [7] at 1794-98.  Dr. Schosheim specifically testified about the findings in Dr. Calabrese's records.  He noted that plaintiff's

orthopedic and neurologic records "indicate that the claimant has mild decreased range of motion of her neck on exam as well as mild decreased range of motion of her back on most exams". Id. at 843.  In contrast, he noted consistently normal findings as well:

> "The claimant did not have any strength deficits in her upper extremities.  She had full range of motion of her upper extremities and lower extremities.  She had no strength deficits, no reflex changes, no muscle atrophy, and no sensory changes.  The records indicate that the claimant had [an] MRI scan . . . that indicates that she had no herniated disks of the lumbar spine, no findings of spinal stenosis, no findings of nerve impingements.  She does have some mild facet arthropathy meaning some mild spondylosis or arthritis at L4-5 and L5-S1. . . . She also had a repeat in September of 2010, which his no change.  She also had [an] MRI scan of her C-spine, cervical spine, which showed basically a normal MRI scan with some minimal bulging disks at multiple levels and minimal degenerative changes."

Id. at 843-44.

In addition to the reasons already identified, ALJ Cordovani noted that Dr. Calabrese's "actual treatment records do not reflect substantial and continued objective testing", and found that "Dr. Calabrese's opinions reflect the claimant's complaints of pain, but remain unsupported by contemporaneous testing from other sources". Id. at 1792.  Elsewhere in his opinion, ALJ Cordovani found that "the claimant's statements concerning the intensity, persistence and limiting effects" of her symptoms, which she testified caused her to stay in bed "half of the month", "are not entirely consistent with the medical evidence and other evidence in the record". Id. at 1788.

ALJ Cordovani also identified and discussed other information in the plaintiff's medical records concerning her activities and treatment that supported his conclusion to assign little weight to Dr. Calabrese's functional assessments. Id. at 1789.  He noted that plaintiff reported working "under the table" and that, "[d]espite many years of consistent pain complaints

the claimant has not shown significant changes in medical imaging and she has not been referred

for aggressive treatment such as surgery or to a spine specialist".  Id.

Elsewhere, ALJ Cordovani cited to MRI reports from 2008 and 2010 showing

"minimal disc bulges at C4-C5 and C5-C6" in the cervical spine and "disc herniation and mild to

minimal asymmetric facet joint degenerative changes" in the lumbar spine.  Id. at 1788.  He

referenced Dr. Schosheim's and Dr. Chandraseakar's testimony that the MRI findings showed

"only mild changes".  Id. at 1797; see also id. at 866, 1818.

In addition, ALJ Cordovani noted:

> "[C]laimant has also suffered injuries while performing [activities]
> that someone as limited a[s] the claimant alleges would not even
> attempt.  For example, the claimant reported to her primary care
> team that she hit her head while trying to move a TV . . . She
> reported to her primary care team that she hurt her back lifting her
> dog in October 2012 . . . The claimant reported to the emergency
> room for 'moderate' pain in the shoulder and neck after helping
> her brother unpack from moving".

Id. at 1790.  Further, the claimant both demonstrated and reported an ability to walk and to

perform other activities of daily living.  Id. at 1789-90.  This evidence adequately supports ALJ

Cordovani's finding that plaintiff's reported symptoms and the limitations assessed by Dr.

Calabrese were inconsistent with the medical and other evidence in the record.

Further, where an ALJ makes an adverse credibility finding concerning the

severity of a plaintiff's reported symptoms, that determination supports a decision to assign little

weight to physician opinions that rely upon those symptoms.  Gates v. Astrue, 338 F. App'x. 46,

49 (2d Cir. 2009) (Summary Order) ("[t]he adverse credibility findings further supported the

ALJ's decision to accord limited weight to doctors' reports that purportedly substantiated

[plaintiff's] disability claim.  As the ALJ observed, Dr. Rodic's assessment was based on an

unreliable foundation:  Gates's subjective complaints about his mental limitations").  Here, both

Drs. Schosheim and Chandrasekhar testified that Dr. Calabrese's opinions appeared to rely upon

plaintiff's subjective reports of pain, rather than upon objective testing or abnormal findings

upon examination.  *See* Administrative Record [6-7] at 858 ("I see what Dr. Calabrese wrote

here. . . . I would accept that based on her pain"), 1824 (testimony that Dr. Calabrese's more

restrictive RFC opinions "are not based on medical evidence").

ALJ Cordovani identified this as a specific reason that he relied upon Dr.

Schosheim's and Dr. Chandrasekhar's opinions, and discounted  those of Dr. Calabrese.  He

noted that "the opinion of Dr. Chandrasekar, MD, was based on the entire record, is generally

consistent, and supported by the opinion of Dr. Schosheim MD", which "was well supported by

narrative detail, which is in contrast to the opinion of Dr. Calabrese, MD . . . which appear to

rely on claimant's allegations of pain".  Id. at 1796-97.  Dr. Schosheim's testimony demonstrates

that he reviewed records "going back to 2008", including records of "multiple exams", MRI

reports, physical therapy records, and orthopedic and neurologic records.  Id. at 842-43.  Based

on his review of those records, he testified:

> "All those records indicate that the claimant has mild decreased
> range of motion of her neck on exam as well as mild decreased
> range of motion of her back on most exams.  The claimant did not
> have any strength deficits in her upper extremities.  She had full
> range of motion of her upper extremities and lower extremities.
> She had no strength deficits, no reflex changes, no muscle atrophy,
> and no sensory changes."

Id. at 843.  Dr. Schosheim also identified plaintiff's subjective complaints as the reason why his

opinion likely diverged from the opinions of Dr. Calabrese:

> "So, my comment on this, judge, is that Dr. Calabrese, who's a
> treater, is taking into consideration the claimant's considerable
> amount of pain and subjective complaints.  And based on Social
> Security rulings, my RFC is purely based on the objective findings,
> the physical examination, imaging studies, EMG nerve conduction
> studies, and the objective findings in the record, not based on her

subjective complaints of pain.  So, that may be the reason why this
is significantly different than what my, what my RFC would be."

Id. at 852.  He later agreed that "if [he] took into consideration her chronic pain, there's no

question that her RFC would be much more limited".  Id. at 856.  He was clear, however, that

"it's really up to the judge, based on Social Security rulings, to hear the claimant and make a

decision concerning the claimant's ability with regard to if she wants to believe the claimant's

pain situation and mobility. . . . [A]s I said, I want to make it clear, the credibility of the claimant

is up to the judge, not up to me".  Id.

       Dr. Chandrasekar's testimony is also consistent with ALJ Cordovani's statements.

He made it clear that his opinions were based upon his review of the objective medical evidence:

    "Q:    And have you reviewed the materials forwarded to you or
made available to you?

    A:    Yes.

    Q:    In that regard, the F section should have included
documents on through 47F . . .

    A:    Yes, so I have received from 1F to 47F"

    ***
    Q:    Okay, what medical impairments did you identify in your
review?

    A:    Well, 1F shows under radiological examination she was . . .
treated for back and neck pain with X-rays and the MRI of the
lumbar spine and the cervical spine showed osteoarthropathy with
mild disc bulge.  But no . . . stenosis of the foramina and then that
is for the neck and back pain . . . the rest of it is continuation of the
back and neck pain and physical findings are minimal".

Id. at 1817-18 (referring to medical evidence, id. at 401-803, 1160-1777, 2039-2196).  Like Dr.

Schosheim, Dr. Chandrasekhar relied upon the objective information in plaintiff's medical

treatment records rather than her complaints of pain:

"Q:     Now doctor when you . . . your residual functional capacity here, did you consider objective medical evidence, subjective medical evidence, or both?

A:     I have to depend on objective medical evidence.  This is what I came to the conclusion with the objective medical evidence.

***
Q:     Okay.  There are, there are more restrictive opinions in the file than what you provided for.  Did you see those?

A:     I found them but they . . . are not . . . based on medical evidence."

Id. 1823-24.

Finally, plaintiff argues that ALJ Cordovani's statement that plaintiff's lack of atrophy was "problematic" was not a "good reason" to discount Dr. Calabrese's opinions. Plaintiff's Memorandum of Law [9-1] at 27-28.  Even if this were the case, such an error was harmless, as there is medical support for the conclusion that such a finding is evidence that claimant retains the functional ability to work.  Dr. Schosheim noted this finding during his testimony (Administrative Record [6-7] at 843), and both Drs. Kelley and Balderman noted this finding in their reports (id. at 507, 1170).  Therefore, I find that ALJ Cordovani satisfied his obligation to give "good reasons" for discounting Dr. Calabrese's functional assessments.

### 3.     The RFC was Supported by Substantial Evidence

Not only did ALJ Cordovani adequately explain his reasons for assigning "little weight" to Dr. Calabrese's opinions, and give "good reasons" for doing so, but he adequately supported the RFC with substantial evidence.  The RFC is based on the opinions of Drs. Schosheim and Chandrasekhar.  ALJ Cordovani found that plaintiff "has the residual functional capacity to perform medium work . . . except can sit for 4 hours continuously and six hours total;

-14-

can stand 4 hours continuously and 6 hours total; can walk 4 hours continuously and 6 hours total".  Administrative Record [7] at 1787.

This finding mirrors the testimony of both doctors.  Dr. Schosheim testified that, based on his review of plaintiff's medical records (id. at 842-445), plaintiff "could occasionally lift, carry, push/pull 25 pounds, frequently lift, carry, push/pull 15 pounds.  She could stand and/or walk combined for six hours out of an eight-hour day and sit for six hours out of an eight-hour day".  Id. at 845-46.  Dr. Chandrasekhar outlined the medical evidence of plaintiff's impairments.  Id. at 1817-19.  He testified that "it will be painful for [plaintiff] to sit for long period of more than five or six hours a day.  And for the same reason, it would be difficult for her to walk on the left foot because of the left foot and ankle pain more than four hours at a time.  . . . Walking total could be . . . six hours sitting and walking at one time would be four hours sitting there, the same six and four hour and standing six and four hours."  Id.  1820.

He testified further that because plaintiff was on medications, including prescription opioids, she could not work "under unprotected heights" or "where balance is needed and climbing ladders is prohibited and moving about in mechanicals  . . . there is too a restriction on that".   ALJ Cordovani included these additional restrictions in the RFC.  Id. at 1787 ("no work at unprotected heights; no ladders ropes or scaffolds; no balancing activities; no work around dangerous moving mechanical parts").

ALJ Cordovani identified additional reasons that he found the opinions of both doctors persuasive when he discussed other opinion evidence.  For example, he found the opinion of Dr. Schosheim more persuasive than the November 29, 2017 opinion of Dr. Balderman.  He explained that Dr. Schosheim "is an orthopedic surgeon and had the benefit of a more complete record than Dr. Balderman, a thoracic surgeon".  Id. at 1794; see also id. at 1797

("Dr. Schosheim had the benefit of many years of longitudinal medical records and displayed familiarity by citing to the record to support his various conclusions.  Moreover, Dr. Schosheim is an expert in orthopedics including over 35 years of experience and board certification").

Similarly, ALJ Cordovani also assigned greater weight to Dr. Schosheim's opinions than those of Dr. Kelly, whom he noted was a "general surgeon".  He noted that "Dr. Schosheim, MD, with the benefit of an additional eight years of medical records and more specific expertise opined that the claimant's objective imaging and course of treatment do not justify a specific limitation with respect to repetitive movements of the lumbar or cervical spine". Id. at 1796.

## CONCLUSION

I find that ALJ Cordovani properly considered the Burgess factors and gave "good reasons" for assigning little weight to Dr. Calabrese's opinion. See Snell, 177 F.3d at 133 (2d Cir. 1999).  Further, his findings are supported by substantial evidence.  Because I cannot say on this record that a reasonable factfinder would have to conclude otherwise, Brault, 683 F.3d at 448, I cannot reject ALJ Cordovani's findings.

For these reasons, the Commissioner's motion for judgment on the pleadings [11] is granted and plaintiff's motion [9] is denied.

**SO ORDERED**.

Dated: September 26, 2023

/s/ _____
JEREMIAH J. MCCARTHY
United States Magistrate Judge